UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Edward J. Perez,

 Plaintiff

v.

E Mac, et al.,

 Defendants

Case No.: 2:24-cv-00185-JAD-MDC

**Order Screening First Amended Complaint with Leave to Amend by May 30, 2025**

[ECF No. 17]

 Nevada inmate Edward J. Perez brings this pro se civil-rights action under 42 U.S.C. § 1983, claiming that his First, Eighth, and Fourteenth Amendment rights were violated when Las Vegas Metropolitan Police Department corrections officers at the Clark County Detention Center stole his mail, his money, and other property, and spit in his religious food in retaliation for his attempts to expose the officers' wrongdoing. I dismissed Perez's original complaint because its scattershot approach violated this court's pleading rules, and Perez has filed an amended complaint, which I now screen under 28 U.S.C. § 1915A. Having done so, I find that Perez has not stated any colorable claim, but he may be able to state claims for First Amendment retaliation and Fourteenth Amendment failure to protect. So while I dismiss his first amended complaint, I do so with limited leave to amend to attempt to replead only these specific claims by May 30, 2025.

**Screening Order**

**A. The court must screen inmate complaints for deficiencies.**

 Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[1] In

---

[1] *See* 28 U.S.C. § 1915A(a).

its review, the court must identify any cognizable claim and dismiss those that fail to state a claim upon which relief may be granted.[2] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[3] Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers,[4] but a plaintiff must provide more than mere labels and conclusions.[5] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[6] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[7]

## B.  Procedural History

Perez's initial complaint[8] attempted to do too much and ended up doing too little. As I noted in the initial screening order, Perez sued 21 individuals for actions over the six years he was detained at the Clark County Detention Center (CCDC) but did not identify which claim he brought against each defendant.[9] I dismissed that initial complaint for failing to comply with Federal Rules of Civil Procedure 8, 10, 18, and 20 and gave him leave to file a first amended

---

[2] *See* 28 U.S.C. § 1915A(b)(1)(2).

[3] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[4] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[5] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[7] *Id.*

[8] ECF No. 1-1.

[9] ECF No. 15 at 2–3.

2

complaint.[10] Perez has now timely filed his first amended complaint (FAC).[11] Perhaps misunderstanding my instructions, Perez's FAC omits the names of all defendants except Mac E., generally describing actions by Las Vegas Metropolitan Police Department (LVMPD) corrections officers.[12]

**C.  Factual Allegations in the FAC[13]**

In November 2019, Perez was in custody at the CCDC. He was placed in "2-C" where he was recorded on camera for two weeks because he was under investigation. Without explaining why, Perez alleges that this placed the only named defendant, Mac E., under investigation for crimes Mac committed at CCDC's computers. Mac made music videos showing himself and other LVMPD corrections officers spitting in Perez's religious meals. Perez alleges, again without explanation, that this started a series of retaliatory actions by corrections officers targeting him. Perez alleges that unnamed officers stole money from his inmate account. Perez also alleges that his mail and property were stolen.

From January 2020 to July 2022, corrections officers that worked in Unit 4-J at CCDC gave other inmates Perez's personal mail in retaliation for Perez's attempts to expose their crimes. In addition to mail, corrections officers gave pictures, books, and phone numbers in Perez's property to other inmates, including sex offenders, in Unit 4-J. Perez alleges that these actions are discussed on inmates' monitored and recorded phone calls and visits in Unit 4-J. Officers also placed Perez's outgoing mail on the internet for anyone to read.

---

[10] *Id.* at 7.

[11] ECF No. 17.

[12] *Id.* at 2.

[13] This is merely a summary of the plaintiff's factual allegations in the FAC, ECF No. 17, and not intended as findings of fact.

3

CCDC corrections officers in Unit 4-J and 6-M also used urine, saliva, and pepper spray to contaminate Perez's religious meals. Corrections officers recorded videos to put on-line. Corrections officers also paid other inmates to spit in Perez's meals. Perez also alleges that corrections officers ordered a "hit" on his life. According to Perez, all of these facts can be confirmed by watching Unit 4-J and 6-M recorded phone calls and visits.

Based on these allegations, Perez specifically identifies three claims: (1) Fourteenth Amendment property deprivation claims; (2) First Amendment Free Exercise; and (3) Fourteenth Amendment failure-to-protect.[14] Construing Perez's pleading liberally, as I must, I find that Perez is also attempting to allege a fourth claim for First Amendment retaliation.

**D.     Analysis**

   *1.     Perez's allegations do not state a colorable Fourteenth Amendment property-deprivation claim.*

While an authorized, intentional deprivation of property is actionable under the Due Process Clause, neither a negligent nor intentional unauthorized deprivation of property by a prison official is actionable if a meaningful post-deprivation remedy is available for the loss.[15] An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes.[16]

---

[14] Perez describes the failure-to-protect claim as an Eighth Amendment claim, but at the time of these allegations, he was a pre-trial detainee whose rights arise under the Fourteenth Amendment.

[15] *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985).

[16] *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982); *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).

Perez alleges that corrections officers stole his mail, his money, and his other property. Based on these allegations, the deprivations were intentional, but not authorized.  Further, Perez has not alleged that no meaningful post-deprivation remedy is available for his losses.  These allegations do not raise a colorable due process claim.  Perez must pursue his claims regarding this property deprivation in state court, and I dismiss this claim without prejudice to his ability to file a separate lawsuit over this issue in state court.

### 2. *Perez fails to state a colorable First Amendment free exercise or RLUIPA claim.*

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof.[17] The Supreme Court has held that inmates retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion."[18] The Supreme Court also has recognized that an inmate's "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security."[19]  "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of his religion.  A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce the individuals into acting contrary to their religious beliefs or exert substantial pressure on an

---

[17] U.S. Const. Amend. I.
[18] *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).
[19] *Id*.

adherent to modify his behavior and to violate his beliefs."[20]  Even if such a belief is substantially burdened, a prison regulation is "valid if it is reasonably related to legitimate penological interests."[21]

Claims brought under RLUIPA are similar to free-exercise claims, although RLUIPA proceeds under a slightly different framework.  RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."[22]  So RLUIPA claims are subject to a strict-scrutiny standard.[23]  A plaintiff has the initial burden of showing that the prison's actions implicated the plaintiff's religious exercise and that the prison's actions substantially burdened his exercise of religion.[24]

RLUIPA broadly defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."[25]  "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs."[26]  RLUIPA's substantial-burden inquiry asks whether the government substantially burdened religious

---

[20] *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015) (internal quotation marks and citations omitted).

[21] *Turner v. Safley*, 482 U.S. 78, 89 (1987).

[22] 42 U.S.C. § 2000cc-1(a)(1)–(2).

[23] *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1066 (9th Cir. 2011).

[24] *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015).

[25] 42 U.S.C.A. § 2000cc-5(7)(A).

[26] *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42 U.S.C.A. § 2000cc-3(g)).

exercise, not whether the RLUIPA claimant is able to engage in other forms of religious exercise.[27] A substantial burden on religious exercise must impose a "significantly great restriction" on the exercise.[28]

Perez alleges that corrections officers constantly spit or placed foreign substances in his religious meals, and encouraged other inmates to do so, as retaliation. To the extent Perez seeks to bring a claim under the First Amendment's Free Exercise Clause or RLUIPA, I find that the allegations are not enough to bring a colorable claim under either theory of liability. For example, Perez pleads no facts about his religious beliefs or religious exercise, let alone facts reasonably suggesting that officers and inmates were acting on a policy of LVMPD. Further, Perez pleads no facts suggesting that Mac E. or the LVMPD officers acted *because of* Perez's religious beliefs. So I dismiss his First Amendment Free Exercise and RLUIPA claims without prejudice. But because it does not appear that Perez could plead additional, true facts at this time to support such claims if given leave to do so, I find that amendment of this claim at this time would be futile, so I dismiss this claim without leave to amend.

### 3. *Perez fails to state a Fourteenth Amendment failure-to-protect claim.*

Under the Fourteenth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.[29] A pretrial detainee states a failure-to-protect claim against an individual officer under the Fourteenth Amendment if (1) the defendant made an intentional decision with respect to the conditions under which the pretrial detainee was confined; (2) those conditions put the pretrial detainee at substantial risk of suffering serious

---

[27] *Holt*, 574 U.S. at 361–62.
[28] *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).
[29] *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the pretrial detainee's injuries.[30]

Perez includes no factual allegations involving Mac E. in this claim. Perez alleges that LVMPD corrections officers passed around paperwork to other inmates that stated that Perez "snitched" or that identified Perez as a sex offender. Rather than attempt to abate a risk to Perez, officers intended that other inmates would try to harm or kill Perez.[31] The officers knew the consequence of their actions increased the risk of harm to Plaintiff. However, Perez has not identified which officers spread the false information that he was a snitch or a sex offender, nor has Perez alleged that he was injured. So I find that Perez has not stated a colorable claim for Fourteenth Amendment failure-to-protect against Mac E. or the unnamed LVMPD corrections officers. Therefore, I dismiss this claim without prejudice but with leave to amend. If Perez chooses to amend this claim to cure this deficiency, he should allege true facts that identify the specific defendants by name, make it clear which specific actions that each of those defendants took to give other inmates the false idea that Perez was a snitch or sex offender, and allege true facts describing how he was injured.

---

[30] *Id.*

[31] *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (holding that a plaintiff-inmate stated a cause of action when he alleged that prison officials labeled him a "snitch" with the intent of having him killed by other inmates).

8

### 4. *Perez has failed to state a colorable First Amendment retaliation claim.*

The last theory that Perez appears to be invoking in his pleading is First Amendment retaliation. Inmates have a First Amendment right to file grievances and to pursue civil rights litigation in the courts.[32] "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."[33] To state a First Amendment retaliation claim in the prison context, a plaintiff must allege "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[34] Total chilling is not required to state a retaliation claim; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.[35]

Perez's complaint adequately alleges that adverse action was taken against him as he alleges that (1) his mail, money, and property were stolen; (2) his meals were deliberately contaminated with saliva, urine, and pepper spray; and (3) corrections officers put a "hit" on him by falsely informing other inmates that he was a "snitch" or "sex offender." But Perez has failed to allege true facts that he took "protected conduct." His amended complaint does not allege that he filed grievances or pursued or threatened to pursue civil rights litigation in the courts. Instead,

---

[32] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).
[33] *Id.*
[34] *Id.* at 567–68.
[35] *Id.* at 568–69.

Perez makes the conclusory statement that he tried "to expose crimes in CCDC done by officers."[36] As a result, I dismiss Perez's claims for First Amendment retaliation against Mac E. and the unidentified LVMPD officers without prejudice and with leave to amend. If he chooses to file an amended complaint to cure the deficiencies in this retaliation claim, Perez will need to allege true facts that (1) identify which defendants, by name, took adverse actions against him; (2) identify the adverse actions; (3) identify what specific protected conduct Perez took for which he is being retaliated against;[37] (4) assert that exercise of his First Amendment rights were chilled; and (5) assert that there was no genuine penological purpose for the adverse actions.

### E. Leave to Amend

Because I find that it is possible that the defects in Perez's First Amendment retaliation and Fourteenth Amendment failure-to-protect claims might be cured, I grant Perez leave to file a second amended complaint for these claims only. Perez may not assert new claims or to add new defendants or to try to fix or replead any other claim.

If Perez chooses to file a second amended complaint, he is advised that the second amended complaint replaces the first amended complaint, so the second amended complaint must be complete in itself.[38] He must file the second amended complaint on this court's approved prisoner-civil-rights form, and it must be entitled "Second Amended Complaint."

---

[36] ECF No. 17 at 3.

[37] Perez's allegations that he was "recorded on camera" and attempted to expose crimes are insufficient. For example, Perez must allege true facts describing how he attempted to expose crimes.

[38] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal).

Perez must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, **in each claim**, he should allege **facts** sufficient to show what **each** defendant did, by name if possible, to violate his civil rights. **He must file the second amended complaint by May 30, 2025**. If Perez does not file a second amended complaint by that deadline, this action will be dismissed without prejudice for failure to state a claim.

## Conclusion

IT IS THEREFORE ORDERED that Perez's first amended complaint **(ECF No. 17) is DISMISSED without prejudice and with leave to file a second amended complaint** asserting First Amendment retaliation and Fourteenth Amendment failure-to-protect claims only. Perez may not assert new claims or to add new defendants or to try to fix or replead any other claim.

If Perez chooses to file a second amended complaint, he must use the approved form and write the words "Second Amended" above the words "Civil Rights Complaint" in the caption. The second amended complaint will be screened in a separate screening order, and **the screening process will take <u>many months</u>. If Perez does not file a second amended complaint by May 30, 2025, the court will dismiss this action without prejudice and close this case**. The Clerk **of the Court is directed to SEND** Perez the approved form for filing a § 1983 prisoner complaint, instructions for the same, and a copy of his first amended complaint **(ECF No. 17)**.

_____
U.S. District Judge Jennifer A. Dorsey
April 14, 2025